# CHARLESTON.

THE BRUCETON BANK v. JOHN ALEXANDER *et als.*

Submitted March 4, 1919.   Decided March 11, 1919.

1.  DEEDS—*Trusts—Wills—"Spendthrift    T r u s t s"—Restraint    of*
    *Alienation.*

    Though restraints upon the alienation, voluntary or involuntary,
    of equitable life estates, commonly designated spendthrift trusts,
    are valid, a grantor or devisor may not restrain the alienation,
    voluntary or involuntary, of a legal life estate.   (p. 574).

2.  TRUSTS—*Spendthrift Trusts.*

    But even where an equitable estate is created in favor of
    another, in order to constitute it a spendthrift trust, the intention
    to do so must be expressly stated or clearly disclosed by a reason-
    able construction of the instrument taken as a whole.   (p. 574).

3.  WILLS—*Election.*

    The provisions of section 11, ch. 78, Code, apply equally to
    curtesy and dower estates.   (p. 576).

4.  SAME—*Election—Provisions for Husband—Bar of Curtesy.*

    If a widower fail to renounce the will of his wife, which makes
    provision for him, within one year from the time of its admis-
    sion to probate, and it clearly appears from the true construction
    of the will, and the attendant facts proper to be considered in
    connection with it, that the provision in his favor was intended
    by the testatrix to be in lieu of curtesy, his curtesy will be bar-
    red, and he shall take no more of her estate than is given him
    by the will.   (p. 576).

5.  SAME—*Election.*

    Though section 11, ch. 78, Code, does not expressly require a
    husband or wife, as the case may be, to elect between rights un-
    der a will and under the general law, yet such is the plain spirit
    and intention of the statute, at least where the provisions of the
    will were clearly intended to be in lieu of curtesy or dower.
    (p. 576).

6.  APPEAL AND ERROR—*Review—Parties.*

    Where a debtor and another jointly own a life interest in cer-
    tain property, and a decree is entered in a judgment creditors'
    suit directing the sale of the entire life interest in satisfaction of
    the debts of the debtor, it will not be reversed, though erroneous,
    where the owner of the other half interest is a party to the suit
    and does not join in the appeal from the decree.   (p. 579).

7. CASE OVERRULED.

The case of *Cunningham* v. *Cunningham*, 30 W. Va. 599, is overruled to the extent that it is inconsistent with this opinion. (p. 578).

Appeal from Circuit Court, Pocahontas County.

Creditors' suit by the Bruceton Bank against John Alexander. Decree for plaintiff, and defendant appeals.

*Affirmed.*

*F. R. Hill* and *L. M. McClintic,* for appellant.
*Andrew Price,* for appellee.

LYNCH, JUDGE:

John Alexander, appellant here, seeks by this appeal to reverse the decree in a judgment creditors' suit subjecting to sale the life estate jointly vested in him and his son Dwight by the will of Elisa Alexander to satisfy the liens of the plaintiff and others against him. The appellant was the husband of Elisa Alexander, who died testate March 17, 1916, the material provisions of whose will are: "To Samuel John Alexander (and) Dwight Ingram Alexander I give possession, use and profit of all I die possessed of every kind and wheresoever placed—excepting thirty-five hundred dollars due me by David Lavie, 182 Beverly Street, Toronto, Canada—to share and share alike as long as both shall live. If Dwight Alexander is alive at his father's death, all and everything I give to him absolutely and unconditionally. If Dwight Alexander is dead at his father's death, absolutely all and everything is to be divided equally between the children of my sister, Emily Kackham, * *." Thus the testatrix devised to her husband and their son jointly all her property, except $3,500 which by another clause she bequeathed to the son absolutely.

This language, appellant says, imports the creation of a spendthrift trust to provide for an aged and indigent husband, and that as such it is beyond the reach of his creditors. The power of a testator to create such an equitable life estate by express devise with restraints upon its alienation, voluntary or involuntary, was settled in this state in *Guernsey* v. *Lazear,* 51 W. Va. 328, and later still further broadened in

*Hoffman* v. *Beltzhoover,* 71 W. Va. 72. For in the latter case, point 2 of the syllabus, it is said: "To create a spendthrift trust it is not essential that the instrument should denominate the beneficiary a spendthrift, or give reasons for creating the trust, or contain all restrictions and qualifications incident to such trust, or contain an express declaration that the interest of the *cestui que trust* in the trust estate shall be beyond the reach of creditors, if the intention of the testator or donor to create such a trust is clearly disclosed by the instrument as a whole."

But it has been held that, though a grantor or devisor may impose such restraints upon equitable life estates, he cannot restrain the alienation, voluntary or involuntary, of a legal life estate. A spendthrift trust is an equitable, not a legal, interest or estate. *Kerns* v. *Carr,* 82 W. Va. 78, 95 S. E. 606. The estate created by the will of Mrs. Alexander is purely legal. The devise was direct and personal. Between the testatrix and the devisees there is no intermediary; no one named or designated to hold the property for them, thus vesting in them an equitable interest, as in *Guernsey* v. *Lazear* and *Hoffman* v. *Beltzhoover, supra.* The estate is the possession of the lands of the testatrix for the joint lives of the husband and son, with remainder over.

As further evincing the unsubstantial character of the contention of the appellant, even if the will had created an equitable interest in his favor, the total absence of language indicating an intention to place it beyond the reach of creditors must be noted. To create a spendthrift trust the intention either must be expressed clearly, as in *Guernsey* v. *Lazear,* or, as in *Hoffman* v. *Beltzhoover,* clearly disclosed by the instrument read as a whole. Here there is nothing to show such an intention; no language from which to infer that the alienation, voluntary or involuntary, of the life estates was restrained. The will involved in the Hoffman case provided that the property should be "for the sole use and support, and for no other purpose, of James William Kerney during the term of his natural life," and that language, it was held, was sufficient to disclose an intention to bar creditors. There is no such language here.

It may also be urged by John Alexander that, since he failed to renounce the will providing for him, as apparently required by section 11, ch. 78, Code, he takes no more of the estate than was given him by that instrument, namely, a life interest in one-half, and, therefore, that the court below erred in holding that regardless of the will defendant had a life interest by curtesy in the whole of the real estate which was liable to be sold for his debts. Section 11 provides: "When any provision for a wife is made in the hsuband's will, she may, within one year from the time of the admission of the will to probate, renounce such provision. * * * If such renunciation be made, or if no provision be made for her in the will, she shall have such share of her husband's real and personal estate as she would have had if he had died intestate, leaving children; otherwise she shall have no more thereof than is given her by the will. A husband may in like manner renounce a provision made for him in the will of his wife, and in such case, or if no provision for him be made in the will, he shall have such share of his wife's estate, real and personal, as he would have had if she had died intestate leaving children; otherwise he shall have no more thereof than is given him by the will."

With respect to a widow's dower, that statute has been construed to mean that the failure of a widow to renounce the will of her husband, which makes provision for her, does not bar her dower unless it clearly appears from the true construction of the will, and the attendant facts proper to be considered in connection with it, that the provision in her behalf was intended by the testator to be in lieu of dower; and if it does not so appear, then she may consistently take both dower and the benefit derivable from the provision of the will. *Cunningham* v. *Cunningham*, 30 W. Va. 599; *Sperry* v. *Swiger*, 54 W. Va. 283; *Miller* v. *Miller*, 76 W. Va. 352.

In like manner it has been held that the husband is entitled, without renouncing the will, to take under it without impairing his marital right to curtesy, but with this distinguishing feature, that, unlike the widow's dower, the curtesy of the husband will not be barred by failure to re-

nounce a provision for him in the will, even when expressed
to be in lieu of curtesy. *Cunningham* v. *Cunningham, supra.*
Such bar, it is said, can be made effective only by agreement
between husband and wife *inter vivos*, by which the wife
delivers to the husband an estate which he agrees to accept
in lieu of his curtesy, not by a provision in her will to that
effect.

The court reached that result in the case cited by con-
struing section 11, ch. 78, Code, in connection with sections
4 and 16, ch. 65, Code, which are: Section 4: "If any estate,
real or personal, intended to be in lieu of her dower, shall be
conveyed or devised for the jointure of the wife, such convey-
ance or devise shall bar her dower of the real estate or the
residue thereof." Section 16: "If any estate, real or per-
sonal, be delivered by the wife to the husband in lieu of his
curtesy, and he accept the same, he shall be barred of his
curtesy in the residue thereof."

Section 4, as construed in *Cunningham* v. *Cunningham,*
*supra*, provides for a conveyance or devise of the husband's
estate, real or personal, in lieu of the widow's dower, thus
enabling him to bar the dower of his wife, or, at least, com-
pel her to elect, under section 11, ch. 78, whether she will
take the provision substituted in lieu of dower, or renounce
the will and take under the general law. But, in construing
the terms of section 16, ch. 65, the court concluded that it
was only by an estate "delivered by the wife to the husband
in lieu of his curtesy," and accepted by him, that she could
bar his curtesy. In other words, such bar could be made
effectual only by agreement between husband and wife *inter*
*vivos.* For that reason the court held that the wife could
not, by a provision in her will, bar the curtesy of her husband,
or compel him to elect whether to take under the will or
under the law, even though the instrument expressly stated
that such was the intention of the testatrix.

We are unable to concur in this construction of the stat-
ute. Such a view does injustice to the language of section
11, ch. 78, and places an undue stress upon section 16, ch.
65. It may be conceded that the latter section standing alone
was properly construed when it was interpreted to mean

what its language plainly imports, namely, that a wife can during her life bar the curtesy of her husband by the delivery to him and acceptance by him of part of her estate, real or personal, in lieu of curtesy. But the latter part of section 11, ch. 78, gives her still a broader right, enabling her, by a provision in her will for her husband, clearly intended to be in lieu of curtesy, to compel him to elect between the will and the legal curtesy. If he renounces the provision of the will, the statute declares that he may take curtesy; if he does not renounce, he shall have no more of her estate than is given him by the will. True, section 11 does not expressly require the husband or wife, as the case may be, to elect between rights under the will and under the general law, but such is within the plain spirit and intention of the statute, at least where the provision in the will was clearly intended to be in lieu of curtesy or dower. "A thing within the intention of the makers of the statute is as much within the statute as if it were within the letter." *Hasson* v. *City of Chester*, 67 W. Va. 278, 282.

In other words, our construction of section 11 applies its provisions equally to curtesy and dower estates, and to the extent that *Cunningham* v. *Cunningham*, 30 W. Va. 599, is inconsistent with this opinion it is overruled. As held in *Sperry* v. *Swiger*, 54 W. Va. 283, and *Miller* v. *Miller*, 76 W. Va. 352, that a widow is not required to elect between the provision for her in the will and the law, unless it clearly appears from the true construction of the will and the attendant facts proper to be considered in connection with it that the provision in the will was intended by the testator to be in lieu of dower, so a widower is not put to his election unless it appears in a similar way that the provision in his favor was intended to be in lieu of curtesy.

Such an intention clearly appears from the true construction of the provision of the will of Mrs. Alexander. By providing that defendant should receive a life estate in one-half of her property, with the exception of the $3500 bequeathed to their son, when under the law his curtesy interest would have been a life estate in all of her lands and a share in her personalty, she clearly evinced an intention that

such provision should be in lieu of curtesy. It was squarely counter to his rights under the law and inconsistent therewith, and utterly meaningless if she also intended him to take his curtesy. If she desired the latter, then there was no occasion for the provision she made, for without it the law would have accorded him double the estate she left for him. Therefore, we are compelled to think that it was her intention to curtail his legal estate in her lands, and provide that the other one-half which he otherwise would have taken should go to their son. That being so, he was put to his election. It was not decided in *Cunningham* v. *Cunningham, supra,* whether the husband, like the wife, was required by the statute to renounce within one year from the time of the admission of the will to probate. Its language is: "A husband may, in like manner, renounce * *," clearly referring to the manner specified in the first part of the section for the wife's renunciation. Therefore we are of opinion that the husband, like the wife, has but one year in which to make his renunciation in the manner specified therefor. Having failed to elect within one year, John Alexander is limited to a life interest in one-half of the estate of his wife.

The decree complained of was erroneous in directing the sale of all of the estate for his debts, since only one-half thereof was his and as such subject to sale in satisfaction of plaintiff's liens. Despite that fact, we are compelled to affirm the ruling of the lower court, because the decree is not prejudicial to John Alexander, his life interest being subject to sale in any event. Dwight Alexander, whose life interest in the other one-half also is being held subject to sale, does not complain of the decree, though prejudicial to him. The former is not hurt by it in any manner. If the decree subjects to sale land in which he has no interest, that is a matter of which he cannot be heard to complain, because not in anywise prejudicial to him. Nor does he assign that as ground for reversal. He claims to be aggrieved only by the finding against the claim of a trust in his favor beyond the reach of his creditors. This claim, as we have seen, rests upon no sound foundation of law or fact.

*Decree affirmed.*